UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

HOLLY STEC,

    Plaintiff,

v.

NANCY A. BERRYHILL,
ACTING COMMISSIONER OF SOCIAL
SECURITY,

    Defendant.
_____/

Civil Action No. 19-10044

HON. MATTHEW F. LEITMAN
U.S. District Judge
HON. R. STEVEN WHALEN
U.S. Magistrate Judge

## REPORT AND RECOMMENDATION

Plaintiff Holly Stec ("Plaintiff") brings this action under 42 U.S.C. §405(g) challenging a final decision of Defendant Commissioner denying her application for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI") under the Social Security Act. Both parties have filed summary judgment motions which have been referred for a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B). For the reasons set forth below, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

# I.  PROCEDURAL HISTORY

On April 12, 2016, Plaintiff filed applications for DIB and SSI, alleging disability as of August 6, 2015 (Tr. 216, 223).  After the initial denial of the claim, Plaintiff requested an administrative hearing, held on December 8, 2017 in Toledo, Ohio before Administrative Law Judge ("ALJ") Melissa Warner (Tr. 37).  Plaintiff, represented by attorney Samantha Ball, testified by teleconference from Mt. Pleasant, Michigan (Tr. 43-65).  Vocational Expert ("VE") Kenneth Ogren also testified (Tr. 66-70).  On May 2, 2018, ALJ Warner found that Plaintiff was not disabled (Tr. 17-29).  On November 5, 2018, the Appeals Council denied review (Tr. 1-3).  Plaintiff filed for judicial review of the final decision on January 7, 2019.

# II. BACKGROUND FACTS

Plaintiff, born December 25, 1972, was 45 when the ALJ issued her decision (Tr. 29, 216).  She completed 12th grade and worked previously as a frame assembler and machine operator (Tr. 254).  She alleges disability due to disc disease of the cervical and thoracic spine, Post Traumatic Stress Disorder ("PTSD"), depression, and "borderline bipolar" disorder (Tr. 253).

### A.  Plaintiff's Testimony

*Plaintiff's counsel prefaced her client's testimony by noting that the alleged onset of disability date had been changed to December 31, 2015* (Tr. 42).

Plaintiff then offered the following testimony:

She and her husband lived in Michigan (Tr. 43).  She weighed 190 pounds (Tr. 44).

She held a valid driver's license and was able to drive short distances (Tr. 44). She was able to read, write, and perform calculations (Tr. 44). She had medical insurance through her husband's work (Tr. 44). Plaintiff's former jobs were machine operator, assembler of bimini frames, and assembler of paddle boats (Tr. 47).

Plaintiff's spinal condition had worsened since the alleged onset of disability (Tr. 48). She had an MRI in August, 2015 after experiencing worsening right shoulder problems, back pain, and left shoulder numbness (Tr. 51). She attributed a previous physical assessment showing that she was capable of working to the use of pain medication and over-exerting herself during assessment (Tr. 52). In addition to the upper body problems, she experienced left knee pain preventing her from standing for more than 10 minutes after which time she required up to 15 minutes to rest (Tr. 53). She coped with body pain with medication and a heating pad (Tr. 54). She regularly used the heating pad once a day but up to five times a day for an hour on bad days (Tr. 54). She experienced bad days up to four times a week (Tr. 55). She experienced the side effect of "runny stools" and daily headaches from Norco (Tr. 55). She derived some relief from over-the-counter medication (Tr. 56). She was unable to sit for more than half an hour at one time (Tr. 57). She was able to lift up to 10 pounds on a one-time basis but was otherwise unable to lift more than five pounds (Tr. 59). Hand numbness prevented her from writing and doing crafts (Tr. 60).

Plaintiff's physical problems were exacerbated by the recent deaths of her brother and father (Tr. 61). Her treating sources had advised her to have steroid injections and undergo surgery (Tr. 61). Because she was "terrified" of surgery, she opted for injections but noted that they did not improve her condition for even one week (Tr. 61). Her pain caused concentrational problems (Tr. 62). She lacked the focus to prepare a meal from scratch, read a book, or follow the gist of a conversation (Tr. 62). She had become socially isolated as a result of her condition, noting that she only picked up the phone to talk to her mother (Tr. 63). On a good day, she was able to perform light household chores but on a bad day, she spent her time "camping out with [a] heating pad" (Tr. 64).

    **B.**     **Medical Evidence**

### 1. Treating Sources[1]

January, 2015 medical records note that Plaintiff was currently receiving injections, engaging in physical therapy, and taking Norco and Robaxin for disc herniations of the neck (Tr. 341). An evaluation from the same month notes Plaintiff's report of left shoulder pain (Tr. 344). Plaintiff was found to be able to lift up to 50 pounds occasionally (Tr. 344). She did not exhibit "pain behaviors" during testing (Tr. 345). A February, 2015 physical exam report states that Plaintiff was capable of lifting up to 25 pounds (Tr. 340). Plaintiff reported good results from steroid injections to the cervical spine (Tr. 379, 466). She exhibited full

---

[1] Plaintiff's amended alleged onset of disability claim is December 31, 2015. Records created more than a year before that date have been reviewed but are not included in the present discussion.

muscle strength (Tr. 380). She was deemed capable of work (Tr. 379). In May, 2015, Plaintiff reported an improvement in pain of 75 to 99 percent after undergoing steroid injections(Tr. 456).

An August, 2015 MRI of the thoracic spine showed a herniated disc at T7-8 (Tr. 357, 388-389). An MRI of the cervical spine showed a herniation at C6-7 with spinal cord compression and a "new" herniated disc at C5-6 (Tr. 360, 386-387, 393). On a scale of one to ten, she reported level "three" to "five" pain (Tr. 382). Joseph White, M.D. noted full muscle strength in all extremities (Tr. 384-385). Plaintiff exhibited a normal gait (Tr. 450). She again reported 75 to 99 percent improvement in symptoms with injections (Tr. 445). The following month, Plaintiff reported that "walking around" helped her upper extremity symptoms (Tr. 422). In December, 2015, Plaintiff was encouraged to continue exercises learned in physical therapy (Tr. 444). An examination of the shoulders was unremarkable (Tr. 443). Plaintiff reported that relief from the steroid injections lasted around one month (Tr. 442).

A January, 2016 work-related evaluation noted a normal gait and stance (Tr. 641). Plaintiff exhibited a "fine tremor" in the upper extremities "more prominent" on the right (Tr. 642). An examination of the wrists was unremarkable (Tr. 642-643). Grant J. Hyatt, M.D. noted an "unusual constellation of symptoms" which did not "clinically correlate" with a diagnosable orthopedic condition (Tr. 643). January, 2016 records note a normal gait (Tr. 438). March, 2016 records note normal strength, muscle tone, and gait (Tr. 433, 436).

Plaintiff was advised to "add walking daily" to her regimen (Tr. 434). She underwent additional steroid injections in May and June, 2016 (Tr. 516, 576, 585).

In May, 2016, vocational expert Kenneth C. Browde, M.Ed., opined that Plaintiff's "maximum wage earning capacity [was] zero" for exertionally light, medium, heavy, and very heavy work due to her physical condition and lack of job skills (Tr. 660).

In June, 2016, Leslie C. Love, Ph.D. composed a letter stating that she met Plaintiff on March 16, 2016 but that Plaintiff had not followed up with proposed psychological treatment (Tr. 479). Dr. Love noted that Plaintiff appeared "disorganized, labile, and upset" and fearful of having surgery due to her brother's recent death from sepsis (Tr. 479). Dr. Love noted that she was "unclear" as to whether the exhibited symptoms reflected "debilitating mental illness," lack of sleep, or Plaintiff's current situational stressors (Tr. 479). The same month, Plaintiff exhibited normal strength, muscle tone, and grip with restricted motion of the right lateral flexion, extension, and right rotation (Tr. 513). Plaintiff reported that she was feeling well and sleeping well with 50 to 74 percent improvement in pain with the most recent injection (Tr. 512). August, 2016 records also note normal strength, muscle tone, and grip (Tr. 510). The following month, Plaintiff requested a "disability form" related to complaints of mood disturbance with fatigue and "expectant dread" (Tr. 507). In October, 2016, she reported that she "enjoy[ed]" counseling but did not want to start psychotropic medication (Tr. 505).

Plaintiff underwent additional steroid injections in November and December, 2016 (Tr. 562). November, 2016 treating records note normal posture, gait, strength, tone, and grip (Tr. 503). Plaintiff exhibited a normal range of motion in both shoulders without tenderness (Tr. 503). A November, 2016 physical work performance evaluation concluded that Plaintiff was incapable of performing even sedentary work on a full-time basis (Tr. 481, 535, 545). She was deemed unable to stand, reach overhead, bend, stoop, kneel, or crouch (Tr. 484). She exhibited decreased muscle strength in the upper extremities (Tr. 485). In December, 2016, Parut R. Bhimalli, M.D. stated that he agreed with the physical evaluation from the previous month (Tr. 534). He found that Plaintiff's work-related abilities were not exacerbated by psychological problems (Tr. 531). In January, 2017, Dr. Bhaimalli re-prescribed Norco (Tr. 527). The same month, Plaintiff underwent additional steroid injections (Tr. 526). The same month, Plaintiff reported that she was currently grieving the death of her father but was "beginning to feel better" with counseling (Tr. 501). She exhibited a restricted range of right shoulder motion with an otherwise normal examination (Tr. 500).

### 2. Non-Treating Sources

In July, 2016, Joe DeLoach, Ph.D. performed a non-examining review of the treating and consultative medical records on behalf of the SSA, finding that Plaintiff experienced mild restriction in activities of daily living, social functioning, and concentration, persistence, or pace (Tr. 80). The same month, Edward Brophy, D.O. conducted a non-examining

assessment of the records pertaining to Plaintiff's physical conditions, finding that she could lift/carry 10 pounds occasionally and less than 10 frequently and sit, stand, or walk for six hours in an eight-hour workday (Tr. 82). He found that she was limited to frequent (as opposed to *constant*) pushing and pulling in the upper extremities (Tr. 82). He limited her to occasional postural activity except for frequent balancing (Tr. 82). The environmental limitations consisted of avoiding concentrated exposure to extreme cold and vibration (Tr. 83).

### C. Vocational Expert Testimony

The VE classified Plaintiff's work as a frame assembler as semiskilled and exertionally medium; final inspector, semiskilled/heavy (medium as performed); and assembler, semiskilled/light[2] (Tr. 67, 332).

The ALJ then posed the following set of restrictions, describing a hypothetical individual of Plaintiff's age, education, and work history:

> Let's first assume that individual could perform less than a full range of light work, except lifting and carrying 10 pounds occasionally, and lesser weights frequently. Occasional climbing stairs, no climbing ladders, ropes and scaffolds. Frequent balancing, occasional stooping, kneeling and crouching, no crawling. No overhead reaching. No exposure to obvious hazards

---

2

20 C.F.R. §§ 404.1567(a-d), 416.967(a-d) defines *sedentary* work as "lifting no more than 10 pounds at a time and occasionally lifting or carrying articles like docket files, ledgers, and small tools; *light* work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds;" *medium* work as "lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds;" and that exertionally *heavy* work "involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds.

including vibration. And simple work that is not fast paced meaning no work where the pace of productivity is dictated by an external source over which the individual has no control such as an assembly line or conveyor belt. Would such a person be able to perform the claimant's past relevant work as actually or generally performed? (Tr. 67-68).

Based on the above restrictions, the VE testified that the hypothetical individual was unable to perform her past relevant work but could perform the sedentary, unskilled work of a bench hand (418,000 positions in the national economy); inspector (472,000); and a second, different inspector position (Tr. 524,000) (Tr. 68). The VE stated further that the need for a sit/stand "at will" option and a limited range of neck motion would not change the job numbers (Tr. 69-70). He stated that a limitation to occasional handling and fingering, or, the need to be off task more than 10 percent of the workday would be work preclusive (Tr. 70).

### D. The ALJ's Decision

Citing Plaintiff's treating records, ALJ Warner found that Plaintiff experienced the severe impairments of "herniated disc at C5-7 and T7-8 and cervical radiculopathy" but that neither of the impairments met or equaled a listed impairment found in 20 C.F.R. Part 404, Subpart P, Appendix 1 (Tr. 20, 22). The ALJ found that the conditions of PTSD, depression, and borderline bipolar were non-severe (Tr. 20-21). She found that Plaintiff retained the Residual Functional Capacity ("RFC") for exertionally sedentary work with the following additional limitations:

> [O]ccasional climbing stairs, stooping, kneeling and crouching; no crawling or climbing ladders, ropes and scaffolds; frequent balancing; no overhead reaching; no exposure to obvious hazards including vibration; no twisting or turning of the neck to the ends of range of motion but the claimant can

>otherwise turn her body to accommodate; and simple work that is not fast paced, meaning no work where the pace of productivity is dictated by an external source over which the individual has no control such as an assembly line or conveyor belt (Tr. 22).

Citing the VE's findings, the ALJ found that Plaintiff could perform the work of a bench hand and two different categories of inspector (Tr. 28, 68).

The ALJ discounted the allegations of disability, noting that Plaintiff ceased work due to a "business-related layoff" rather than disability (Tr. 23). She cited August, 2015 physician's records stating that back surgery was elective and that Plaintiff was advised to stretch and strengthen for pain control (Tr. 23). The ALJ noted that a December, 2015 examination showed a normal range of motion except for right lateral flexion and right rotation on extension (Tr. 24). She noted that Plaintiff exhibited a normal strength and tone of the shoulders and a normal hand grip (Tr. 24). The ALJ observed that as of May, 2016, Plaintiff reported that she could lift objects weighing up to 20 pounds (Tr. 24). She noted that an early 2017 examination of the shoulders and hands was "entirely normal" (Tr. 24).

The ALJ also observed that Plaintiff's acknowledged activities were inconsistent with the claims of disability, noting the ability to walk, perform light housework intermittently, care for pets, perform yard work, shop, and drive short distances (Tr. 25). The ALJ accorded "great weight" to Dr. Brophy's non-examining finding that Plaintiff was capable of sedentary work (Tr. 25).

### III. STANDARD OF REVIEW

"Under the substantial evidence standard, a court looks to an existing administrative record and asks whether it contains 'sufficien[t] evidence' to support the agency's factual determinations." *Biestek v. Berryhill*, — U.S. —, 139 S.Ct. 1148, 1154 (2019)(punctuation altered)(*citing Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938))(emphasis deleted). The district court reviews the final decision of the Commissioner to determine whether it is supported by substantial evidence. *Biestek* at 1152; 42 U.S.C. §405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Commissioner of Social Sec.*, 486 F.3d 234, 241 (6th Cir. 2007)(*citing Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir.1994)).

The standard of review is deferential and "presupposes that there is a 'zone of choice' within which decision makers can go either way, without interference from the courts." *Mullen v. Bowen,* 800 F.2d 535, 545 (6th Cir. 1986)(*en banc*). Where substantial evidence supports the ALJ's decision, the reviewing court "defers to that finding even if there is substantial evidence in the record that would have supported an opposite conclusion.'" *Blakley v. Commissioner Of Social Sec.*, 581 F.3d 399, 406 (6th Cir. 2009)(*citing Key v. Callahan*, 109 F.3d 270, 273 (6th Cir.1997)). However, in determining whether the evidence is substantial, the court must "take into account whatever in the record fairly

detracts from its weight." *Wages v. Secretary of Health & Human Services*, 755 F.2d 495, 497 (6th Cir. 1985). The court must examine the administrative record as a whole, and may look to any evidence in the record, regardless of whether it has been cited by the ALJ. *Walker v. Secretary of Health and Human Services*, 884 F.2d 241, 245 (6th Cir. 1989).

## IV. FRAMEWORK FOR DISABILITY DETERMINATIONS

Disability is defined in the Social Security Act as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). In evaluating whether a claimant is disabled, the Commissioner is to consider, in sequence, whether the claimant: 1) worked during the alleged period of disability; 2) has a severe impairment; 3) has an impairment that meets or equals the requirements of an impairment listed in the regulations; 4) can return to past relevant work; and 5) if not, whether he or she can perform other work in the national economy. 20 C.F.R. §416.920(a). The Plaintiff has the burden of proof at steps one through four, but the burden shifts to the Commissioner at step five to demonstrate that, "notwithstanding the claimant's impairment, he retains the residual functional capacity to perform specific jobs existing in the national economy." *Her v. Commissioner of Social Sec.*, 203 F.3d 388, 391–92 (6th Cir. 1999).

## V. ANALYSIS

### The ALJ's Evaluation of the Subjective Symptoms

In her sole argument for remand, Plaintiff faults the rejection of her professed allegations of disability. ECF No. 12, PageID.712 (*citing* SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016)). She argues, in effect, that the ALJ erred by failing to consider her allegations of the Norco side effects of a "runny stool" and stomach problems. ECF No. 12, PageID.714.[3]

SSR 16–3p sets forth the standard for evaluating the alleged limitations using a two-step process. 2016 WL 1119029, at *3 (Mar. 16, 2016). First, the ALJ determines whether the claimant has a medically-determinable impairment that could reasonably be expected to produce the alleged pain or limitation. *Id.* at *3. Here, ALJ Warner satisfied the first prong of 16-3p by acknowledging that the condition of herniated discs and cervical radiculopathy caused significant work-related limitations (Tr. 20).

---

[3]

In contrast to a recently rescinded ruling regarding the evaluation of the subjective symptoms, (SSR 96-7p), SSR 16-3p eliminates the use of the term "credibility" from SSA policy. 2016 WL 1119029, at *1. The Ruling states that "subjective symptom evaluation is not an examination of an individual's character." Instead, ALJs are directed to "more closely follow [the] regulatory language regarding symptom evaluation." *Id.*; *See* 20 C.F.R. §§ 404.1529, 416.929. However, "the implementation of SSR 16-3p did not abrogate the substantial case law pertaining to credibility evaluations under SSR 96-7p." Calvin Eugene *Boles v. Commissioner of Social Sec.*, 2019 WL 5897920, at *7 (M.D.Tenn.,Nov. 12, 2019)(*citing Dooley v. Commissioner of Social Sec.*, 656 F. App'x 113, 119, n.1 (6th Cir. July 28, 2016)("SSR 16-3p removed the term 'credibility' only to 'clarify that subjective symptom evaluation is not an examination of an individual's character'").

Second, the ALJ must evaluate claims of limitation not reflected in the objective evidence. SSR 16-3p at *3-4. The ALJ must consider "the entire case record, including the objective medical evidence; an individual's statements about the intensity, persistence, and limiting effects of symptoms; statements and other information provided by medical sources and other persons; and any other relevant evidence in the individual's case record." *Id.* at *4. In addition to an analysis of the medical evidence, 20 C.F.R. §§ 404.1529(c)(3), 416.929 list the factors to be considered in making a credibility determination:

> (i) Your daily activities; (ii) The location, duration, frequency, and intensity of your pain or other symptoms; (iii) Precipitating and aggravating factors; (iv) The type, dosage, effectiveness, and side effects of any medication you take or have taken to alleviate your pain or other symptoms; (v) Treatment, other than medication, you receive or have received for relief of your pain or other symptoms; (vi) Any measures you use or have used to relieve your pain or other symptoms ... and (vii) Other factors concerning your functional limitations and restrictions due to pain or other symptoms.

In other words, the ALJ must consider whether the record as a whole reflects the claimant's professed degree of limitation.

As a threshold matter, the requirement that the ALJ consider allegations of medical side effects does not mandate their explicit mention in the written decision. *See French v. Commissioner of Social Sec.*, 2016 WL 3951419, at *13 (E.D.Mich. June 30, 2016)(Morris, M.J.); *adopted,* 2016 WL 3924111 (E.D. Mich. July 21, 2016). Likewise here, ALJ Warner's statement that she "considered" the evidence presented and allegations regarding "the intensity, persistence and limiting effects" of the conditions is sufficient to address the claims of medication side effects (Tr. 25).

Moreover, the ALJ specifically asked Plaintiff whether she experienced medication side effects at the hearing to which Plaintiff replied as follows: "I'm wondering if I'm getting them because I'm starting to have runny stools lately. I mean for awhile. I think – I don't know if it's messing with my stomach or not" (Tr. 55). Assuming that Plaintiff's speculation that the digestive problems could be interpreted as an actual medication side effect, she did not allege that the condition caused work-related limitations, i.e., the need for frequent bathroom breaks, dehydration, etc. While Plaintiff went on to report that she experienced headaches, it is unclear whether she meant that the headaches were another "side effect" or a symptom of the cervical condition (Tr. 56). In any case, Plaintiff reported that she dealt with headaches with the use of over-the-counter pain relievers (Tr. 56).

The treating records showing either no record of medication side effects (373, 383, 499, 502, 509, 512) or denial of medication side effects (Tr. 308) also undermines Plaintiff's claim that omission of reference to "side effects" in the administrative opinion warrants a remand. Notably, Plaintiff did not allege Norco side effects in a May, 2016 functional report (Tr. 276). While Plaintiff also argues that the ALJ erred by failing to include a reference to the alleged side effect in the hypothetical question to the VE, it is well settled that the ALJ is not obliged to credit rejected allegations of limitation in the question to VE or by extension, in the ultimate RFC. *Stanley v. Secretary of Health and Human Servcs.*, 39 F.3d 115, 118–119 (6th Cir. 1994).

Although Plaintiff's arguments refer only to her allegations of Norco-related side effects, Defendant notes that the May, 2016 functional report includes allegations of the Ambien-induced side effects of "nightmares, dizziness, [and] agitation." ECF No. 13, PageID.725 (*citing* Tr. 276, 497-519). However, as Defendant observes, the treating records do not include reports of Ambien side effects. *Id.* (*citing* Tr. 433, 500, 503, 509, 515). This is consistent with my own review of the treating records. Further, to the extent that the professed side effects of Ambien could arguably imply some degree of psychological limitation, the ALJ noted that Plaintiff's mental status examinations over the course of the relevant period were normal (Tr. 21).

Because the administrative findings are well supported and adequately explained, the deference generally accorded to ALJ's weighing of the subjective allegations is entitled to deference. *See Cruse v. Commissioner of Social Sec.*, 502 F.3d 532, 542 (6th Cir. 2007)(An ALJ's determination is entitled to "great weight")(*see also Anderson v. Bowen*, 868 F.2d 921, 927 (7th Cir. 1989))(*citing Imani v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986))(ALJ's evaluation of the professed limitations must stand unless 'patently wrong in view of the cold record'").

Because the ALJ's determination is well explained, generously supported by the record, and well within the "zone of choice" accorded the administrative fact-finder, the non-disability determination should not be disturbed by this Court. *Mullen v. Bowen, supra.*

## VI. CONCLUSION

For the reasons stated above, I recommend that Defendant's Motion for Summary Judgment [Docket #13] be GRANTED and that Plaintiff's Motion for Summary Judgment [Docket #12] be DENIED.

Any objections to this Report and Recommendation must be filed within 14 days of service of a copy hereof as provided for in 28 U.S.C. §636(b)(1) and E.D. Mich. LR 72.1(d)(2). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985); *Howard v. Secretary of HHS,* 932 F.2d 505 (6th Cir. 1991); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981). Filing of objections which raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Secretary of HHS,* 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231,* 829 F.2d 1370, 1373 (6th Cir. 1987).

Any objections must be labeled as "Objection #1," "Objection #2," etc., and any objection must recite *precisely* the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party must file a concise response proportionate to the objections in length and complexity. The response must specifically address each issue raised in the objections, in the same order and labeled as "Response to Objection #1," "Response to Objection #2," *etc.*

                                       s/ R. Steven Whalen  
                                       R. STEVEN WHALEN  
                                       UNITED STATES MAGISTRATE JUDGE  

Dated: December 11, 2019

### CERTIFICATE OF SERVICE

I hereby certify that a copy of the foregoing document was sent to parties of record on December 11, 2019, electronically and/or by U.S. mail.

                                       s/Carolyn M. Ciesla  
                                       Case Manager to the  
                                       Honorable R. Steven Whalen